UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAMES F. CAHILL,

                        Petitioner,

v.                                      9:21-CV-0833
                                                    (DNH/TWD)
CHRIS MILLER

                        Respondent.

---

APPEARANCES:                                            OF COUNSEL:

JAMES F. CAHILL
Petitioner pro se
99-B-2298
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. LETITIA JAMES                              JODI A. DANZIG, ESQ.
Attorney for Respondent                           Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS
United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

**I.    INTRODUCTION**

       Petitioner James Cahill seeks federal habeas corpus relief pursuant to 28 U.S.C. §

2254. Dkt. No. 1, Petition ("Pet.").

       Respondent opposes the petition. Dkt. No. 14, Corrected Motion to Dismiss; Dkt. No.

15, Text Order (granting request to file corrected motion and to use it to replace the original

motion, Dkt. No. 12).

Petitioner successfully requested two extensions of time in order to file a reply. Dkt. Nos. 16 & 18, Letter Motions; Dkt. Nos. 17 & 19, Text Orders (granting extension requests). The Traverse was due on or before June 21, 2022. Dkt. No. 19. Ultimately, petitioner did not file a reply.

## II.     THE PETITION

Petitioner was initially convicted in Onondaga County, in 2004, by a jury verdict, to two counts of first degree murder, one count of first degree assault, and other related charges. *People v. Cahill*, 2 N.Y.3d 14, 37-38 (2003). Petitioner was sentenced to death for both first degree murder counts. *Id.* at 38. Petitioner appealed. *Id.*

The New York Court of Appeals ultimately decided to modify the Onondaga County Court's judgment by reducing petitioner's conviction from two counts of first degree murder to one count of second degree murder, and remitting that count to the county court for resentencing. *Cahill*, 2 N.Y.3d at 72. The Court of Appeals otherwise affirmed the conviction as modified. *Id.*

Petitioner challenges the 2004 resentencing of his judgment of conviction in Onondaga County, upon a jury verdict, of second degree murder, first degree assault, and fourth degree criminal possession of a weapon. Pet. at 1-2.[1] The New York State Supreme Court, Appellate Division, Fourth Department, unanimously affirmed the resentence and, on October 23, 2008, the Court of Appeals denied petitioner's application for leave to appeal. Pet. at 2-3; *People v. Cahill*, 46 A.D.3d 1455, 1456 (4th Dep't 2007), *lv. denied*, 11 N.Y.3d 830 (2008). Petitioner did not seek a writ of certiorari from the United States Supreme Court.

---

[1] For the sake of clarity, citations to petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

Petitioner states, in a conclusory fashion, that he has filed at least twenty petitions for writs of error coram nobis. Pet. at 3-4, 10-11. However, petitioner did not include each individual filing. Instead, consistent with the Court's Order directing respondent to file the relevant state court records, respondent included copies of the nineteen post-judgment motions that petitioner filed collaterally attacking his state court conviction. Dkt. No. 12-1, Exhibits. It appears that petitioner was mistaken with the specific number of challenges he filed; however, his representation that there were several was accurate.

Petitioner's first pro se writ of error coram nobis was filed on May 25, 2009. Dkt. No. 12-1 at 1-23. The Fourth Department denied the writ on July 2, 2009. *Id.* at 24. The Court of Appeals then denied petitioner's application for leave to appeal on November 6, 2009. *Id.* at 25.

Petitioner then filed a pro se motion to vacate his sentence, pursuant to New York Criminal Procedure Law § 440.20 ("440 motion"), on January 14, 2010. Dkt. No. 12-1 at 26-47. The Onondaga County Court denied the 440 motion on June 3, 2010. *Id.* at 48-54. The Fourth Department then denied petitioner's application for leave to appeal on October 6, 2011. *Id.* at 55.

Petitioner's second pro se writ of error coram nobis was filed on December 9, 2011. Dkt. No. 12-1 at 56-71. The Fourth Department denied the motion on February 10, 2012. *Id.* at 72. The Court of Appeals then denied petitioner's application for leave to appeal on June 13, 2012. *Id.* at 73.

Petitioner filed his second 440 motion on September 11, 2012. Dkt. No. 12-1 at 74-86. The Onondaga County Court again denied the motion on December 5, 2012. *Id.* at 87-

3

93. The Fourth Department denied petitioner's request for permission to appeal on February 28, 2013. *Id.* at 146.

Petitioner's third pro se writ for error coram nobis was filed on March 6, 2013. Dkt. No. 12-1 at 147-159. The Fourth Department denied the motion on June 7, 2013, and the Court of Appeals denied petitioner's application for leave to appeal on September 19, 2013. *Id.* at 160-61.

Petitioner's fourth pro se application for coram nobis relief was filed on September 23, 2013. Dkt. No. 12-1 at 162-186. The Fourth Department denied the motion on December 27, 2013, and the Court of Appeals denied petitioner's application for leave to appeal on May 6, 2014. *Id.* at 187-88.

Petitioner's fifth pro se motion for a writ of error coram nobis was filed on June 12, 2014. Dkt. No. 12-1 at 189-205.[2] The Fourth Department denied petitioner's motion and, on May 6, 2015, the Court of Appeals denied petitioner's application for leave to appeal. *Id.* at 206-07.

Petitioner's sixth pro se error coram nobis action was filed on May 13, 2015. Dkt. No. 12-1 at 208-219. The Fourth Department denied the writ and, on December 4, 2015, the Court of Appeals denied petitioner's application for leave to appeal. *Id.* at 220-21.

Petitioner's seventh pro se motion for coram nobis relief was filed on December 22, 2015. Dkt. No. 12-1 at 222. The Fourth Department again denied the writ and, on June 9, 2016, the Court of Appeals denied petitioner's application for leave to appeal. *Id.* at 231-232.

---

[2] On the first page of the petition, *see* Dkt. No. 12-1 at 189, petitioner indicated that his collateral challenge was filed in 2013; however, there are several other references in that same application that indicate that the year is actually 2014 and petitioner merely made a clerical error while composing his state court challenge, s*ee* Dkt. No. 12-1 at 193, 205, 206.

Petitioner's eighth pro se writ of error coram nobis was filed on June 21, 2016. Dkt. No. 12-1 at 233-242. The Fourth Department denied the motion on September 30, 2016, and the Court of Appeal's denied petitioner's application for leave to appeal on December 21, 2016. *Id.* at 243-44.

Petitioner's ninth pro se application for coram nobis relief was filed on January 9, 2017. Dkt. No. 12-1 at 245-257. The Fourth Department denied the motion on March 24, 2017, and the Court of Appeals denied petitioner's request for leave to appeal on July 27, 2017. *Id.* at 258-59.

Petitioner's tenth pro se motion for a writ of error coram nobis was filed on August 1, 2017. Dkt. No. 12-1 at 260-70. The Fourth Department denied the writ and, on December 11, 2017, the Court of Appeals also denied petitioner's application for permission to appeal. *Id.* at 272.

Petitioner's eleventh motion for a writ of error coram nobis was dated on December 20, 2018, Dkt. No. 12-1 at 273; however, the notary stamps and the affidavit of service, also completed by the petitioner, indicate that the date was actually December 20, 2017, *id.* at 277, 284, 285. The Fourth Department denied the writ on March 16, 2018, and the Court of Appeals denied petitioner's request for leave to appeal on May 30, 2018. *Id.* at 286-87.

Petitioner's twelfth application seeking coram nobis relief was filed on June 14, 2018. Dkt. No. 12-1 at 288-297. The Fourth Department denied the application and the Court of Appeals also denied petitioner's request for permission to appeal on December 13, 2018. *Id.* at 298-99.

Petitioner's thirteenth action for coram nobis was filed on December 27, 2018. Dkt. No. 12-1 at 300-315. The Fourth Department denied the action and, on May 31, 2019, the

Court of Appeals denied petitioner's application for leave to appeal. *Id.* at 316-17.

Petitioner's fourteenth application for a writ was filed on June 5, 2019. Dkt. No. 12-1 at 318-330. The Fourth Department denied petitioner's application and, on December 3, 2019, the Court of Appeals also denied petitioner's request for leave to appeal. *Id.* at 331-32.

Petitioner's fifteenth application for coram nobis was filed on December 13, 2019. Dkt. No. 12-1 at 333-349. The Fourth Department denied the motion on March 13, 2020, and, on June 23, 2020, the Court of Appeals also denied petitioner's motion for leave to appeal. *Id.* at 350-51.

Petitioner's sixteenth motion for a writ of error coram nobis was filed on June 30, 2020. Dkt. No. 12-1 at 352-367. The Fourth Department denied the motion and, on December 18, 2020, the Court of Appeals also denied petitioner's application for leave to appeal. *Id.* at 368-39.

Petitioner's seventeenth, and final, attempt to seek coram nobis relief was filed on December 29, 2020. Dkt. No. 12-1 at 370-383. The Fourth Department denied the application for the writ on March 19, 2021, and, on June 14, 2021, the Court of Appeals also denied petitioner's request for leave to appeal. *Id.* at 384-85.

Petitioner argues that he is entitled to federal habeas relief because (1) his double jeopardy rights were violated, Pet. at 5-6; (2) the resentencing court was vindictive, *id.* at 6-8; and (3) the resentencing court exceeded its jurisdiction when it sentenced petitioner on the assault count, *id.* at 8-9.

## III.   DISCUSSION

### A.   One-Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).[3]

For purposes of section 2244, a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case. *Gonzalez*, 565 U.S. at 150; *Saunders v. Senkowski*, 587 F.3d 543, 547-49 (2d Cir. 2009).

The New York Court of Appeals denied petitioner's application for leave to appeal from his resentencing on October 23, 2008. *Cahill*, 11 N.Y.3d at 830. Petitioner did not file an application for a writ of certiorari, therefore, his conviction become "final" for purposes of the AEDPA ninety days later, on January 21, 2009, when the time to seek certiorari expired. *Thaler*, 565 U.S. at 149-150. Therefore, petitioner had until January 21, 2010, to timely file his federal habeas petition.

The present petition, which was filed on July 20, 2021, was submitted approximately

---

[3] Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable, or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C. § 2244(d)(1)(B)-(D). None of the bases for a later date upon which the statute of limitations could have begun to run appear to apply in this case.

eleven and a half years after the expiration of the statute of limitations.[4]

### B.   Statutory Tolling Does Not Save The Petition.

Petitioner argues that all of the post-conviction motions that he filed, namely the seventeen petitions for writs of error coram nobis and the two 440 motions, sufficiently tolled the statute of limitations and his petition was timely filed. Pet. at 10-11, 12. The respondent disagrees.

The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *Saunders*, 587 F.3d at 548. The tolling provision "excludes time during which properly filed state relief applications are pending, but does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam). The tolling provision excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the motion was taken. *Saunders*, 587 F.3d at 548; *Smith*, 208 F.2d at 16.

While the statute of limitations will be statutorily tolled while petitioner's properly filed collateral attacks were pending, his habeas petition is still untimely.

Petitioner's statute of limitations began running on January 21, 2009, and 124 days of the period elapsed before petitioner filed his first writ of error coram nobis on May 25, 2009. The limitations period was then tolled through November 6, 2009, while his action was pending in state court. Consequently, petitioner had 241 days left to timely file his federal

---

[4] Under the prison "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988)

habeas case.

After petitioner's first state court action was fully exhausted, another sixty-nine (69) days of the limitations period passed before his first 440 motion was filed in January of 2010. This state court action tolled the limitations period through October 6, 2011. At this time, petitioner had 172 days remaining in the limitations period.

After the 440 motion concluded, another sixty-four (64) days elapsed before petitioner filed his second writ of error coram nobis in December of 2011. Statutory tolling applied through the action's conclusion on June 13, 2012. Petitioner had 108 days left to timely file her habeas petition.

Then, ninety (90) days passed until the petitioner filed his second 440 motion on September of 2012. The limitations period was tolled while the 440 motion was pending, until February 28, 2013. Petitioner was left with eighteen (18) days to file his habeas action.

Another ten (10) days from the statutory period passed between the filing of petitioner's next two motions for a writ of error coram nobis. The first was filed on March 6, 2013, and tolled the limitations period through September 19, 2013, and the second was filed on September 23, 2013, and tolled the limitations period through May 6, 2014. At this point, petitioner only had 8 days left in his limitations period. Accordingly, to be timely filed, petitioner's habeas action would have to be commenced on or before May 14, 2014. Unfortunately for petitioner, he failed to file the instant action until July 20, 2021, over seven years too late.

Instead, petitioner filed another petition for a writ of coram nobis on June 12, 2014. However that motion, and every additional state court collateral attack thereafter, were filed after the statutory limitations period had expired. Despite filing an additional thirteen

9

challenges, none of them had any bearing on the present analysis because an application for collateral relief cannot serve to "revive [an] expired statute of limitations." *Gillard v. Sticht*, No. 9:16-CV-0513 (MAD), 2017 WL 318848, at *3 (N.D.N.Y. Jan. 23, 2017) (citations omitted); *accord, Roberts v. Artus*, No. 1:16-CV-2055, 2016 WL 2727112, at *2 (E.D.N.Y. May 5, 2016) ("If the 440 motion was filed after the one-year statute of limitations period expired, it cannot be counted for purposes of statutory tolling.").

### C. Equitable Tolling Does Not Save The Petition.

AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (citing, *inter alia*, *Smith* 208 F.3d at 17). The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). A petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008).

To make the requisite showing, a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing[.]" *Rodriguez*, 2015 WL 5968837, at *6 (quoting *Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir. 2001)). Further, a petitioner must establish that he "acted with reasonable diligence throughout the period he seeks to toll." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). "The link of causation is broken if the person seeking equitable tolling has not exercised reasonable diligence." *Rodriguez,* 2015 WL 5968837, at *6 (citing *Barrett v. United States*, 961 F. Supp. 2d 403, 408 (D. Conn. 2013)); *see also*

10

*Hizbullahankhamon,* 255 F.3d at 75; (noting that causal relationship cannot be demonstrated "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

Petitioner fails to make any such argument that he is entitled to equitable tolling. Instead, petitioner solely states that statutory tolling renders his present petition timely.

Even if petitioner were to attempt to proffer that equitable tolling did apply, he fails to allege facts that would warrant extraordinary circumstances or a causal relationship. Petitioner does not allege that any circumstances prevented him from seeking timely relief in this Court and, even if he did, the record would belie any such claims with petitioner's active and prolific litigation record in state court.

### D. No Equitable Exception Saves the Petition.

Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. §2244(d)(1) in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). It is important to stress that "[o]nce guilt is . . . established . . . a federal habeas court will not relitigate the question of guilt for a state defendant who protests his actual innocence . . . [r]ather, a federal habeas court will review state convictions for constitutional error." *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019).

An actual innocence claim will be recognized only in a "narrow class of truly extraordinary cases [where a petitioner can] present[] credible and compelling claims of actual innocence." *Hyman*, 927 F.3d at 656 (citing *Schlup*, 513 U.S. at 315) (internal quotation marks omitted); *see also House*, 547 U.S. at 538 (noting that the actual innocence gateway standard is "demanding and permits review only in the extraordinary case.")

11

(internal quotation marks omitted). "The petitioner's burden in making a gateway showing of actual innocence is deliberately demanding." *Hyman*, 927 F.3d at 656 (citing cases). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also Rivas v. Fischer*, 687 F.3d 514, 518 (2d Cir. 2012); *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327);[5] *see also Doe*, 391 F.3d at 160-62.

Petitioner does not advance any arguments that he is actually innocent; therefore, this equitable exception also does not save petitioner's untimely filing. Furthermore, even if petitioner attempted to assert as much, he has failed to produce new, reliable evidence of his innocence that would result in an acquittal. Therefore, the exception is inapplicable to the instant case.

## V.   CONCLUSION

**WHEREFORE**, it is

**RECOMMENDED** that the petition, Dkt. No. 1, be **DENIED and DISMISSED** in its entirety; and it is further

**ORDERED** that the Clerk of the Court shall provide petitioner with copies of the

---

[5] *Schlup* and *House* involved procedurally defaulted claims. *See McQuiggan*, 569 U.S. at 386. The Supreme Court in *McQuiggan* held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, the expiration of the statute of limitations." *Id.*

unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[6] and it is further

**RECOMMENDED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk shall serve a copy of this Report-Recommendation and Order upon the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

DATED: August 16, 2022

    Syracuse NY

*[signature]*
**Thérèse Wiley Dancks**
**U.S. Magistrate Judge**

---

[6] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).